**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SAM FUNTEAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 03-C-7624 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| BP PRODUCTS NORTH AMERICA, INC., | ) |
| and LAKESIDE OIL COMPANY | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sam Funteas filed an eleven-count, thirty-seven page complaint that was assigned to this Court on April 9, 2004. Currently before this Court is the motion to dismiss, or in the alternative, motion for a more definite statement, filed by Defendant British Petroleum Company ("BP"). Also before this Court is the motion to dismiss, or in the alternative, motion for a more definite statement or to strike filed by Defendant Lakeside Oil Company ("Lakeside").

This Court denied Defendants' motions as to the first three counts of Plaintiff's complaint–all state law claims–on June 22, 2004. Both Defendants subsequently withdrew their motion to dismiss Count VII, a state law claim related to anticipatory breach. On July 13, 2004, Plaintiff requested a voluntary dismissal of his claim under the Illinois Consumer Fraud and Deceptive Practices Act, his claim for an "entitlement to future lost profits", and his claim with respect to the tort of outrage. Plaintiff's request is GRANTED and those counts are DISMISSED.

Defendants have not withdrawn, Plaintiff has not dismissed, and this Court has not yet ruled on Defendants' motions as they relate to four of Plaintiff's claims: a claim for violation of the Sherman Anti-Trust Act (the "Sherman Act"), a claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), a claim for common law fraud, and a claim for "attorney's fees." For the reasons stated below, Defendants' motions to dismiss are GRANTED with respect to both of Plaintiff's federal law claims. Consequently, Plaintiff's remaining state law claims are also DISMISSED without prejudice.

**Factual and Procedural Background**[1]

This case is about a deal gone awry between Plaintiff and Defendants, according to Plaintiff's complaint. Beginning in late 1997, an authorized agent of BP named Bob Newman and an authorized agent of Lakeside Oil named Tom Valley met with Plaintiff at his office in order to convince him to become an operator of a BP gas station and to use Lakeside as his distribution source for BP products. After the meeting, Plaintiff filled out an application to become a BP station operator. BP never rejected the application.

That meeting was the first of "several" meetings between Plaintiff and Defendants. At these meetings, BP identified Lakeside as its agent and a distributor of BP gasoline and oil. BP told Plaintiff that Lakeside was also an agent of BP for the purposes of locating and securing potential BP station sites and operators.[2]

---

[1]The facts in this opinion are all taken from Plaintiff's Complaint, as is appropriate on a motion to dismiss for failure to state a claim. They are provided as background to this memorandum and they do not represent a conclusive determination of fact on any issue in this litigation.

[2]Based on Plaintiff's complaint it appears that BP and Lakeside were of one mind when dealing with Plaintiff. They were both present at each meeting, where they presented a united

At these meetings, Defendants made a variety of promises to Plaintiff. Defendants' promises ran the gamut: they promised that they would help Plaintiff through all stages of the station management, from the planning and construction phases (including providing Plaintiff with recommendations of outside sources that could help with market research and station construction) to the operation phase (including a promise of timely delivery of BP products, training, participation in the BP credit card program, advertising, and "an elaborate grand opening."). Defendants also promised Plaintiff a $250,000 rebate once the station was complete.

The meetings took place in a variety of areas, ranging from Rosemont to Milwaukee. At each meeting, Defendants encouraged Plaintiff to become a BP operator. Plaintiff was to operate the first BP station in his area; the station was to provide BP with a "foothold" into the local market.

While Defendants were encouraging Plaintiff to become an operator, BP was involved in merger talks with Amoco. Plaintiff states in his complaint: "[t]hose merger discussions were not disclosed to plaintiff because defendants desired to keep plaintiff involved in his BP station project and to proceed therewith to completion in the event the merger did not take place." Plaintiff, meanwhile, continued his efforts to get his BP station up and running. Plaintiff continued to update Defendants with his progress and they repeatedly expressed their approval. Defendants reviewed Plaintiff's construction plans and other materials and expressed their satisfaction with the project. Defendants also provided Plaintiff with documents that encouraged him to continue with his efforts.

---

front to Plaintiff.

In late 1999, Valley informed Plaintiff that he "was sorry" but BP was withdrawing approval of Plaintiff's station project, defendants would not cooperate further with Plaintiff, and Plaintiff would not be provided with BP products or programs. At that point, Plaintiff had completed the planning aspects of his project and had spent more than $80,000. That amount was not reimbursed to him.

Plaintiff originally filed his complaint in federal court on October 28, 2003. The case was reassigned to this Court on April 9, 2004.

## STANDARD OF REVIEW

Under FRCP 8(a), a complaint generally need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 168 (1993). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Weiler v. Household Finance Corp.* 101 F.3d 519, 524 (7th Cir. 1996)(citing *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). In reviewing a motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *See Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002). If a complaint fails to allege a necessary element required to obtain relief, however, dismissal is in order. *See R.J.R. Services, Inc. v. Aetna Casualty and Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989). A complaint "must at least include the operative facts upon which a plaintiff bases his claim." *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). When reviewing the complaint, only factual allegations will be considered: legal conclusions which may be alleged are not binding upon the court. *See*

*Reichenberger v. Pritchard* 660 F.2d 280, 282 (7th Cir. 1981) (*citing City of Milwaukee v. Saxbe*, 546 F.2d 693, 704 (7th Cir. 1976)).

## ANALYSIS

Remaining before this Court are Defendants' motions with respect Plaintiff's Sherman Act, RICO, fraud and attorney's fees claims.

*Count VI: Sherman Act*

The crux of Plaintiff's antitrust claim is that Defendants violated the Sherman Act by withdrawing their support for his gas station project, thereby depriving him of the opportunity to compete with other BP stations, including existing stations and those that "would enter the market place from time to time, a circumstance which plaintiff was entitled to anticipate."[3] According to Plaintiff, "the anti-competitive effects of defendants' misconduct was material and substantial and detrimental to plaintiff's business objectives and purposes, depriving him of a fair income." Plaintiff concludes that defendants "thereby unreasonably restricted and restrained competition in the relevant market area by limiting the number of BP station competitors therein, that being an unreasonable restraint of trade."

In order to state a claim under § 1 of the Sherman Act, 15 U.S.C. § 1 (1997), Plaintiff must show "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." *See Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir.1993)).

---

[3] This Court cannot decide at this time whether any other BP stations did exist in the area: Plaintiff does allege so in his complaint, but he also alleges that he was to have been the pioneer BP station. It is possible that as the events in this case were unfolding, other BP stations sprung up in Plaintiff's market.

Defendants do not contend that Plaintiff fails to allege a conspiracy. Instead, they focus their efforts on arguing that Plaintiff has not alleged a resultant unreasonable restraint of trade in the relevant market or accompanying anticompetitive effect.

Plaintiff can defeat the motions in one of two ways: either he can allege a per se violation of §1 of the Sherman Act or he can allege such facts that, in accordance with the "Rule of Reason" analysis, he has adequately alleged a violation of the Sherman Act. *See Denny's*, 8 F.3d at 1220.

Plaintiff fails to state a per se violation: he does not allege facts in his complaint that can be construed to indicate that Defendants are responsible for a practice that "facially appears to be one that would almost or almost always tend to restrict competition and decrease output" such as price-fixing or group boycotts. *See Car Carriers, Inc. v. Ford Motor Co.* 745 F.2d 1101, 1108 (7th Cir. 1984) (*citing Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1, 19-20,(1979)); *see also BCB Anesthesia Care, Ltd. v. Passavant Memorial Area Hosp. Ass'n,* 36 F.3d 664, 669 (7th Cir. 1994)("The *per se* approach to antitrust law was a judicial creation--a belief that some conduct was so invariably anti-competitive that it did not justify a detailed examination of purpose and effect."). The per se label "must be applied with caution." *Car Carriers, Inc.*, 745 F.2d at 1108. The Seventh Circuit has held that restraints that do not involve an agreement on prices are not per se illegal and instead are subject to a "Rule of Reason" analysis. *See 42nd Parallel North v. E Street Denim Co.*, 286 F.3d 401, 404. (7th Cir. 2002)(citing *Business Electronics Corp. v. Sharp Electronics Corp.,* 485 U.S. 717, 735-736 (1988)). In Plaintiff's case, the agreement and its eventual dissolution had nothing to do with an agreement on prices.

Because Plaintiff fails to allege a per se violation, this Court must consider whether he states a claim under the "Rule of Reason." *See Car Carriers, Inc*, 745 F.2d at 1109. The Rule of Reason analysis requires the plaintiff to show that the challenged restraint has adversely impacted competition in the relevant market. *See 42nd Parallel North*, 286 F.3d at 404. This Court fails to see how Plaintiff's complaint alleges that the challenged actions by Defendants in withdrawing their support for his proposed BP gas station adversely impacted competition in the relevant market.

First, the facts alleged in the complaint do not support the proposition that Defendants' actions constitute a "restraint." Defendants did not keep Plaintiff from operating a gas station: they only refused to let him run a BP gas station. Moreover, it is not as if BP gas stations are the only kind of gas station that Plaintiff could have run. Plaintiff was free to operate another gas station, which is exactly what he did.

Furthermore, even if the decision to break off relations Plaintiff could be construed as a restraint of trade (there is no reason to believe it could be construed in such a manner based on Plaintiff's complaint), there is no indication in the complaint that Defendants' actions caused any adverse impact on the relevant market. At best, Plaintiff's complaint can be read to allege the relevant market is other BP gas stations–both existing and future–in Woodale and its surrounding area. Based on the complaint, this Court cannot conceive of a reason why BP operators should be the relevant market, let alone how they suffer from any injury from Defendants' actions.

Plaintiff claims that discovery will help him. But how discovery could help him is entirely unclear: this Court fails to see how discovery could possibly yield the information that other BP gas station owners were adversely affected by BP refusing to allow Plaintiff to open his

gas station. Nor is it possible to deduce why, based on the facts alleged in the complaint, Defendants' decision "unreasonably restricted and restrained competition in the relevant market area by limiting the number of BP station competitors therein, that being an unreasonable restraint on trade."

There is no indication in the complaint that Defendants' behavior had any adverse impact on competition in the relevant market.[4] Plaintiff's facts do not even support the conclusion that consumers of gasoline (a group ignored by Plaintiff) were somehow harmed by Defendants' conduct. Plaintiff cannot expect this Court to presume that the only gas station operators in Woodale and the surrounding area are BP gas stations. *See Car Carriers,* 725 F.2d at 1110 ("In considering a motion to dismiss, the court is not required to don blinders and to ignore commercial reality."). Presumably the denizens of Woodale and wayfarers alike can frequent other gas stations run by other operators. Nothing in Plaintiff's complaint supports the idea that Defendants' conduct raises antitrust concerns; Plaintiff is reminded that the Sherman Act is not designed to be a remedy for run of the mill breach of contract claims.

<u>Count VIII: R.I.C.O.</u>

Based on the complaint, it appears that Plaintiff's 18 U.S.C. §1962(c) allegations revolve around the fact that Defendants "cut plaintiff off at the knees" (figuratively speaking, presumably) and then "facilitated and supplemented their illegal, fraudulent scheme and

---

[4]In his response to Defendants' motions, Plaintiff attempts to expand the group harmed to existing BP station operators in a surrounding nine-county area. Regardless of the size of the group in this case, Plaintiff does not state a valid claim under the Sherman Act. Increasing the size of the group does not overcome the fact that he appears to have picked the wrong group– BP operators– as his relevant market. In addition, inclusion of more operators does not remedy Plaintiff's failure to allege that Defendants' conduct had an adverse impact on competition.

extortionate methods by using the mails or other communications' methods methods [e.g. faxes] across state lines to send a variety of materials to plaintiff to encourage his pursuit of his station project; such as mail fraud." (mistaken punctuation in original).

In order to bring a claim under 18 U.S.C. §1962(c), Plaintiff must allege 1)conduct 2) of an enterprise 3) through a pattern 4)of racketeering activity. 18 U.S.C. §1962(c); *see also, Slaney v. The Intl. Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001). A plaintiff bringing a civil RICO complaint is required to plead all averments of fraud with particularity, in line with the heightened pleading standard of Fed.R.Civ.P. 9(b). *See id.* In light of that requirement, "a RICO plaintiff must, at minimum, describe two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *See id. (*citing *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 726 (7th Cir.1998) and *Lachmund v. ADM Investor Serv., Inc.,* 191 F.3d 777, 784 (7th Cir.1999)).

Plaintiff has failed to allege a pattern of racketeering activity such that he satisfies the pleading requirements of Rule 9(b). A pattern of racketeering activity "consists, at a minimum, of two predicate acts of racketeering (committed within a ten-year period)." *Id.* at 599 (*citing Goren,* 156 F.3d at 728). Plaintiff does not do so in this case. In fact, what he offers to support the proposition that there was a pattern of racketeering activity is remarkably similar to the pattern that failed in *Slaney*. In *Slaney*, the Plaintiff asserted that the defendants "used and continues to use the mails and wires to convey their false and deceptive communications to and about Mrs. Slaney, which communications were and continue to be an integral component of the fraudulent scheme." In this case, Plaintiff asserts "Defendants' facilitated and supplemented

their illegal, fraudulent scheme and extortionate methods by using the mails or other communications' methods [e.g. faxes] across state lines to send a variety of materials to plaintiff to encourage his pursuit of his station project; such is mail fraud." (mistaken punctuation in original).

The use of a multiplicity of mailings is not enough, the *Slaney Court* noted, to constitute a "pattern" of racketeering activity. *See Slaney*, 244 F.3d at 599 (citations omitted). In situations where there is a "single fraudulent scheme" with only one injury to one victim, requirement of a pattern of racketeering activity is not met. *See id.; see also Lipin Enterprises, Inc. v. Lee, 803 F.2d 322, 324 (7th Cir. 1986)(* determining that "[t]here must be some indication of a "threat of continuing activity" by the defendants, not just one instance of fraud with a single victim."). Nothing in Plaintiff's complaint indicates that Defendants might be liable for anything other than a single instance of fraud with a single victim. Simply failing to fulfill contractual obligations is not the stuff of RICO, regardless of Plaintiff's opinion on the matter.

Plaintiff's RICO count is dismissed because Plaintiff has failed to allege a pattern of racketeering activity. Given that this failure is adequate grounds for dismissal, this Court need not review the other shortcomings in Plaintiff's RICO claim. *See Lipin Enterprises, Inc. v. Lee,* 803 F.2d 322, 324 (finding no need to reach the question of whether Plaintiff had adequately alleged a RICO enterprise when complaint could be dismissed for failure to allege a pattern of racketeering activity.).

*All Remaining Counts*

Given that Plaintiff has failed to adequately allege a claim under the Sherman Act or RICO, those counts are dismissed without prejudice. No basis for federal jurisdiction remains.

While this Court may retain jurisdiction over state law claims as a discretionary matter pursuant to 28 U.S.C. §1367(a), it declines to do so in this case. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)("it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

The state law counts are dismissed without prejudice. If Plaintiff wishes to pursue his state law claims, he can file in the Illinois courts or file an amended complaint in this Court that asserts a viable federal cause of action.[5]

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. Plaintiff's complaint is DISMISSED in its entirety, without prejudice. If Plaintiff wishes to file an amended complaint, he must do so by April 25, 2005.

Enter:
/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **March 30, 2005**

---

[5] When this Court orally denied Defendants' motions as to the first three counts of the complaint, it had not yet determined that Plaintiff failed to state a claim upon which relief could be granted in federal court. Now, it is apparent that the only remaining claims in this case are state law claims. At this juncture, retaining jurisdiction over those claims is not necessary.